IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2006-LDP8 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-LDP8<br><br>Plaintiff,<br><br>v.<br><br>UE SHOPPES ON DEAN LLC (F/K/A VNO SHOPPES ON DEAN LLC<br>Defendants | CASE NO. 2:15-CV-06410-MCA-MAH |

**CONSENT ORDER APPOINTING RECEIVER**

This matter is before the Court upon the Stipulation to Appointment of a Receiver (the "Stipulation") of U.S. Bank National Association, as Trustee, as Successor-In-Interest to Bank of America, National Association, as Trustee, as Successor-By-Merger to LaSalle Bank National Association, As Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-LDP8 Commercial Mortgage Pass-Through Certificates, Series 2006-LDP8 ("Plaintiff") and UE Shoppes on Dean LLC (f/k/a VNO Shoppes on Dean LLC) ("Defendant") seeking the appointment of a receiver for the real and personal property commonly known as the Shoppes on Dean Street, 24 and 42 South Dean Street, Englewood, Bergen County, New Jersey (the "Mortgaged Premises" or the "Property"), as more fully described in **Exhibit A** hereto.

**IT IS HEREBY ORDERED AND DECREED AS FOLLOWS:**

1. NAI James E. Hanson, Inc. (the "Receiver") is hereby appointed as Receiver over the Property with all of the powers and obligations set forth herein.

2. Until further notice of this Court, all persons or entities, including but not limited to tenants in possession of the Property or any portion thereof, and any persons liable therefore, shall pay to the Receiver all rents, income, or other amounts now due and unpaid and all rents, income, or other amounts hereafter to become due on their respective tenancies and Defendant, either directly or through its agents, servants, representatives and attorneys, is hereby enjoined and restrained from collecting any rents or fees from or incident to the Property and from interfering in any manner with the Property.

3. The Receiver shall have possession of the Property, including the real property, personal property and all other property subject to the Mortgage and shall have full power and authority to operate, manage and conserve such Property. Without limiting the foregoing, the Receiver shall have the power and authority, immediately upon the entry of this Order, to:

(a) In accordance with the Loan Documents, secure tenants and execute leases for the Property, the duration and terms of which are reasonable and customary for the type of use involved, and such leases shall have the same effect as if made by the Defendant;

(b) collect the rents, issues, account receivables, insurance claim proceeds, real estate tax refunds, utility deposits, security deposits and profits from the Property from any time period;

(c) maintain appropriate insurance for the Property against loss by fire or other casualty, which may include, but not be limited to, the following coverages, from any insurer or prospective insurer: property, liability (and excess liability), auto liability, workers

compensation, EPLI, employer liability, employee dishonesty, business interruption, boiler and machinery, builders risk, construction bonding, environmental, terrorism, other bonding professional liability and errors and omissions, in such amounts and with such coverage as are required under the Mortgage sought to be foreclosed in this action. The Receiver is authorized to continue any current policies in place, and is authorized, with Plaintiff's prior written approval, to purchase further insurance as the Receiver deems appropriate. All such insurance policies shall name the Receiver, Plaintiff, and Defendant as additional insured and shall name Plaintiff as mortgagee and as loss payee with respect to all casualty policies;

(d) employ construction managers, general contractors, subcontractors, architects, engineers, consultants, title companies, environmental consultants, asset managers, property managers, leasing agents, administrative support, attorneys, security companies, custodians, janitors, maintenance workers, repairman/contractors, assistants, agents, accountants and other employees reasonably deemed necessary, appropriate, or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order including, but not limited to, the maintenance and operation of the Property;

(e) pay taxes which may have been or may be levied against the Property;

(f) establish bank accounts;

(g) receive all rents and proceeds from the Property (whether historical, current or prospective), including, but not limited to, security deposits, rents, accounts receivable, insurance claim proceeds, real estate tax refunds, utility deposits, security deposits, and earnest money deposits presently in the possession of the Defendant and/or its agents;

(h) make all repairs, declarations, renewals, replacements, alterations, additions, betterments, and improvements in connection with the Property as may seem judicious

to the Receiver, however, Receiver must obtain Plaintiff's prior written approval for (a) any such single cost in excess of $2,500; (b) costs exceeding $5,000 in the aggregate; (c) capital expenditures that fail to comply with the Budget (as defined hereinafter);

(i) hire or retain any agents necessary or appropriate to do any of the duties listed above without further approval of this Court, including, but not limited to, accountants, attorneys, environmental consultants and personnel, brokers, leasing agents and property managers;

(j) terminate or enter into vendor or other contracts pertaining to the Property as Receiver may determine in its reasonable judgment are necessary, with no further obligation or liability (including not having to pay any termination fees) under any terminated contract, however, Receiver must obtain Plaintiff's prior written approval. The Receiver may pay vendors for contracts entered into out of rents from the Property;

(k) procure or maintain utility services for the Property, to include but not be limited to gas/steam, electric, water, sewer, trash, phone, cable, internet, and snow removal, without suffering, regardless of the internal policies of any utility provider, the termination of such service or refusal to authorize any new account based upon previous unpaid bills for services rendered prior to the appointment of the Receiver or during the term of the Receiver, with any and all accounts to be opened or transferred to the Receiver's name. Further, the Receiver is not responsible for any utility bills or other debts accruing prior to its appointment and the Receiver is not personally responsible for any bills during the receivership;

(l) take possession of all cash or funds belonging to or for the benefit of Defendant in bank accounts associated with the Property (no matter from what time period),

whether in the name of the Property, Defendant or its agents or employees, and to open, transfer and change all such bank accounts into the name of the Receiver;

      (m)   institute, prosecute, defend and/or settle such legal proceedings as the Receiver deems necessary relating to the care or possession of the Property and to collect any such sums which may be due from any source relating to use of the Property; and

      (n)   take such other actions as may be reasonably necessary to conserve the Property and other property subject to the mortgage, or as otherwise authorized by the Court.

    4.   The Receiver is authorized, without further leave of the Court, to defend or institute and prosecute suits or summary proceedings related to the Property or the duties imposed upon the Receiver by this Order, including but not limited to proceedings (a) for the collection of rents, income, and other amounts (which include tenants who have vacated their space), (b) for the removal of (i) any tenant or tenants in default (whether for failure to pay rent or other amounts when due, or otherwise, including violation of the Property rules) (ii) any tenant or tenants whose terms have expired and have not been renewed, or (iii) any other person(s) or entity(ies) unlawfully in possession of the Property, or (c) otherwise related to the Property or the duties imposed upon the Receiver by this Order. This Order shall act as notice to all tenants of the Property that the loan on this Property is in default and the Property is in the foreclosure process.

    5.   The Receiver shall manage the Property as would a prudent person, taking into account the effect of the Receiver's management on the interest of the Plaintiff as mortgagee and Defendant as mortgagor. The Receiver may, without an order of the court, delegate managerial functions to a person in the business of managing real estate of the kind involved who is

financially responsible and prudently selected. To the extent the Receiver receives sufficient receipts from the Property, and except to the extent ordered otherwise by the Court, the Receiver:

(a) shall maintain the existing casualty and liability insurance required in accordance with the Mortgage or applicable to the Property at the time the Receiver took possession, or shall find more cost-effective replacement insurance of comparable coverage with replacement insurers, and, to that extent, existing insurers of the Property are hereby ordered to release claims history on existing policies to Receiver;

(b) shall use reasonable efforts to maintain the Property in at least the same condition as existed at the time the Receiver took possession, excepting reasonable wear and tear and damage by any casualty;

(c) shall apply receipts in accordance with Section 15 of this Order;

(d) may make other repairs and improvements necessary to comply with building, life-safety and other similar codes or with such other contractual obligations as the Receiver deems affect the Property, however, Receiver must obtain Plaintiff's prior written approval for (a) any such single cost in excess of $2,500; (b) costs exceeding $5,000 in the aggregate; (c) capital expenditures that fail to comply with the Budget (as defined hereinafter); (d) payment of unsecured debt (other than ordinary and necessary trade accounts payable);

(e) may hold receipts as reserves reasonably required for the foregoing purposes;

(f) may take such other actions as may be reasonably necessary to conserve the Property, or as otherwise authorized by the court, provided sufficient funds are available;

(g) may also, with prior Court approval, pay any and all other outstanding obligations to suppliers incurred in arm's length transactions who, prior to the entry of this Order,

supplied materials, business supplies and/or labor to or for the benefit of the Property, but only to the extent the Receiver shall determine, in its sole judgment, that it is prudent to do so in order to maintain the business relationships with such suppliers for the benefit of the Property, provided sufficient funds are available from the Property, and without, by so doing, making the Receiver liable for any other antecedent debts relating to the Property.

6. To the extent the Receiver decides to continue the services of any current employees, agents or other personnel with respect to the Property, neither the Receiver nor any person or entity engaged by the Receiver hereunder shall be liable for any claims of any nature whatsoever of such employees, agents, or other personnel that arose prior to the date and time of the entry of this Order, which claims include, but are not limited to, unpaid but accrued wages, unpaid but accrued sick time, unpaid but accrued vacation time, unpaid but accrued overtime and/or any and all other liabilities related to unemployment and/or worker's compensation claims.

7. The liability of the Receiver is and shall be limited to the assets of the receivership, and neither the Receiver nor any person or entity engaged by the Receiver hereunder shall be personally liable for any duly authorized actions properly and lawfully taken pursuant to this Order.

8. As soon as reasonably practicable, but in no event later than ten (10) business days after the entry of this Order, Defendant and/or its agents shall provide or make available to the Receiver the following, to the extent such items and things exist and have not previously been provided to the Plaintiff:

  (a)  Defendant's federal employer identification numbers;

  (b)  Copies of any and all service contracts pertaining to the Property;

(c) Copies of any and all leases, lease abstracts, purchase agreements and the like pertaining to the Property;

(d) All open invoices for services or goods relating to the Property;

(e) A list of any and all bank accounts in the name of the property, including the name or names of the institutions in which the accounts are located, any and all account numbers for each account, and monthly statements for each account for the (24) twenty-four month period preceding the date of this Order;

(f) A copy of the 2014–2015 year-end financial statements and 2016 year-to-date (and month by month detail), including, to the extent they exist, balance sheet, income statement, accounts receivable (and receivables/arrearages aging), operating statements, current year budget, sources and uses of cash flow, detailed rent roll, accounts payable, check register, security deposit listing, trial balance, general ledger, contractor statements, lien waivers, sworn owner statements, construction draws, bank reconciliations and bank statement;

(g) A complete set of keys (including all masters) and all security and/or access codes and/or cards to the Property and a schedule (including full contact information) identifying each person or entity (including security companies, municipal/governmental agencies and utility companies), who currently has one or more keys and/or access cards to the Property or who has knowledge of any access codes thereto;

(h) For the (24) twenty-four month period preceding the date of this Order, and in addition to the materials identified in subsections (a)-(g) above, any and all records and information Defendant may have documents concerning the Property, including without limitation all written and electronic books, records, correspondence, and other information to the extent they already exist and have not previously been provided to the Plaintiff and related to (i)

any agreements to which the Property is or may be subject; (ii) any amounts received from the tenants of the Property; (iii) all liens or other encumbrances on the Property; (iv) property taxes, assessments and related appeals; (v) insurance of all types for Defendant and tenants (including but not limited to liability, property, excess liability, auto liability, boiler and machinery, business interruption, professional liability, employee dishonesty, builders risk, construction related insurance and workmen's compensation) related to the Property; (vi;) all maintenance and service contracts; (vii) all invoices for services at the Property; (viii) all tenant files, including but not limited to correspondence, leases, lease abstracts, CAM billing statements, purchase agreements and sample leases; (ix) a current and accurate copy of all electronic information for items related to accounting including tenant escalations/reconciliations; (x) a full and complete rent roll including but not limited to schedules/information related to tenant security deposits, encumbrances, options, escalations, rents and term; and (xi) all marketing information including but not limited to brochures, photographs (including aerial), maps, signage, and (xii) all other aspects of the Property records that are or may be necessary or pertinent to the Receiver's management, maintenance, operation and/or leasing of the Property.

(i) Any and all insurance loss histories and/or claims on the Property;

(j) Any and all other documents relating to the Property as reasonably requested by the Receiver; and

(k) All property and all other things of value associated with use, operation and maintenance of the Property.

9. Defendant shall at all times after the entry of this Order provide full cooperation to the Receiver for carrying out its duties hereunder, and timely respond to all reasonable

requests made by the Receiver. Defendant's obligation to use best efforts to provide or make available to the Receiver the items and things identified herein shall be continuing.

10. So long as any part of the Property remains in the Receiver's possession, the Receiver is directed to prepare and file with the Court, within sixty (60) days after the last day of the first month of the entry of this Order a proposed 12-month budget (the "Budget") for the operation of the Property. The Budget shall be subject to the prior written approval of Plaintiff. So long as any part of the Property remains in the Receiver's possession, the Receiver is directed to prepare and file with the Court, within sixty (60) days after the last day of the first month of the entry of this Order and no less frequently than every month thereafter, and within forty-five (45) days after termination of the receivership, a full and complete report, under oath, setting forth: (i) all receipts, disbursements, cash flow, and all changes in the assets in the Receiver's charge, or interests in or claims against the assets, that have occurred during the preceding month; (ii) (a) balance sheet, statement of income and expenses, statement of cash flows, and budget vs. actual comparison report; (b) a detailed rent roll showing the name of each tenant, and for each tenant, the space occupied, the lease commencement/expiration date, the rent payable, aged accounts receivables, the rent paid to date and the security deposit (if any) being held for said tenant, a comparative sales report for each tenant (with per square foot sales), if applicable under the leases, and a leasing activity report, each in reasonable detail; (c) an aged payables report and an aged receivables report; (d) a capital expenditures report including the type and amount of each capital expenditure made or proposed during the reporting period; and (e) bank statements with monthly reconciliations for the reporting month; (iii) the condition of the Property; (iv) any recommendations as to actions needed to preserve and protect the Property or to otherwise carry out the Receiver's duties; (v) marketing and leasing efforts; (vi) the current

status of all licenses, permits and other governmental entitlements and/or approvals; and (vii) any other information the Receiver determines is relevant to the receivership and/or the Property. The Receiver is further directed to serve copies of each such report on the attorneys of record for Plaintiff, Defendant, and any other party who submits a written request to the Court and the Receiver to be served with copies of such requests within fifteen calendar days following the end of each calendar month. Any party having an objection to the Receiver's report shall file a written objection with the Court no later than fifteen (15) business days after the date of the Receiver's filing of the report. Any objection not filed within the time prescribed by this Order shall be deemed waived.

11. In the event Plaintiff advances funds pursuant to the terms of the Loan Documents (the "Advances") to the Receiver during the pendency of the receivership to enable the Receiver to perform its duties hereunder, such Advances shall be considered Debt (as defined in the Mortgage) secured by the lien of the Mortgage. After the Receiver is appointed, under no circumstances shall Defendant be required to advance any funds for the Property or the receivership absent Defendant's written consent.

12. The Receiver may at any time file a motion requesting that it be exonerated, discharged and released from all its appointments as Receiver.

13. The Receiver shall not have any responsibility for the preparation or filing of any tax return of any kind for the Defendant but shall, if so asked by Defendant, provide the Defendant with information within Receiver's possession so that Defendant may prepare and file any such returns.

14. Neither the Defendant nor anyone associated therewith or acting under the Defendant's authority or control shall:

    (a)  possess or manage the Property in any way;

    (b)  collect, withdraw or transfer, in any way, funds or revenue derived from operation of the Property;

    (c)  remove or destroy any property from the Property;

    (d)  terminate or cause to be terminated any license, permit, lease, contract, insurance policy or agreement relating to the Property; or

    (e)  otherwise interfere with Receiver's possession or operation of the Property.

  15.  Receipts received from operation of the real estate by the Receiver shall be applied in the following order of priority after payment of expenses associated with the Property:

    (a)  to payment and reimbursement of the Receiver for all fees, costs and expenses incurred by the Receiver or the Receiver's agents/delegates in connection with all Property related expenses incurred by the Receiver;

    (b)  to payment of authorized insurance premiums and taxes on the Property;

    (c)  to payment of reasonable and necessary expenses associated with the Property;

    (d)  to payment of the obligations owed to Plaintiff under the Loan Documents;

    (e)  to payment of such other obligations incurred with prior Court approval; and

    (f)  to the extent that funds remain after payment of the foregoing, but only in the event all of the sums due and owing to Plaintiff under the Loan Documents have been paid in full, to the Defendant.

16. Defendant, its agents, and employees, shall turn over to the Receiver, within five (5) business days from the date this Order is entered, all sums in existence on the date hereof that are related or pertain to, or are derived from the Property, including, but not limited to, (a) all cash in hand, (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments), and (c) all sums held in accounts in any financial institutions, including, without limitation, (i) tenant/lessee security deposits, (ii) deposits held in escrow for any purpose, such as for payment of real estate taxes and insurance premiums, (iii) proceeds of insurance maintained for, or pertaining to, the Property, (iv) rent or prepaid rent, (v) funds designated or intended for capital improvements, repairs, or renovations to, or in connection with, the Property, and (vi) all other sums of any kind relating to the use, enjoyment, possession, improvement, or occupancy of all or any portion of the Property.

17. The Receiver shall, upon the entry of judgment in mortgage foreclosure, be authorized to expose the Property to public foreclosure sale pursuant to 28 U.S.C. § 2001, et seq., and shall thereafter pass title to the Property to the successful bidder.

18. The Receiver shall post a bond of $20,000.00 within ten days of the date of entry of this Order.

19. The Receiver shall be compensated for its services hereunder consistent with the fee schedule attached hereto and marked as **Exhibit B** to this Order. The fee schedule set forth on Exhibit B shall encompass all of the Receiver's duties pursuant to this Order, including exposing the Property to a public foreclosure sale.

20. Receiver operates under a license agreement with New America Network, Inc., d/b/a NAI Global ("NAI Global"). NAI Global is a wholly owned subsidiary of C-III Capital Partners LLC. C-III Asset Management LLC, the Special Servicer for Plaintiff, is also a wholly

owned subsidiary of C-III Capital Partners LLC. The license agreement is a marketing agreement that allows Receiver to use certain branding material, but NAI Global has no direct control over the day-to-day business of Receiver. Receiver intends to act as the property manager and leasing agent for the Property, and Receiver will pay to NAI Global a percentage of fees it earns in connection with the leasing and management of the Property in accordance with the terms of its existing license agreement.

**BY THE COURT:**

_____
, J.

Dated: _____